UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAUL E. ARLTON**, an individual,<br><br>7239 Spoonbill Lane<br><br>Carlsbad, CA 92011<br><br>    Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF THE NAVY,** an agency within the United States Government responsible for the United States' Operations at sea.<br><br>    General Counsel of the Navy<br><br>    Naval Litigation Office<br><br>    720 Kennon St., SE, Bldg. 36, Room 233<br><br>    Washington Navy Yard, DC 20374-501<br><br>    Defendant. | CASE NO. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

1

**STATEMENT OF RELATED CASES**

Plaintiff, Paul Arlton, has brought a claim against the National Aeronautics and Space Administration ("NASA") and the NASA Office of JPL Management and Oversight ("NOJMO") under the Freedom of Information Act, 5 U.S.C. § 552, regarding the Mars Helicopter Ingenuity in *Paul E. Arlton v. NASA and NOJMO*, Case No. 24-1646, currently pending in the United States District Court for the District of Columbia.

Plaintiff and his brother, David Arlton, also have a pending lawsuit against the Government for infringement of U.S. Patent No. 8,042,763B2 ("the '763 patent") for the Mars Helicopter Ingenuity, for infringement of U.S. Patent No. 10,814,969 B2 ("the '969 patent"), and correction of inventorship of U.S. Patent No. 10,793,265 ("the '265 patent") for the NOMAD drone in *Lite Machines Corporation, et al. v. The United States*, 143 Fed. Cl. 267 (2019). Plaintiffs' company, Lite Machines Corporation, has also asserted claims for breach of contract and a taking of its statutory rights under the Small Business Innovation Research program in violation of the Fifth Amendment. The Mars Helicopter and NOMAD drone both derive from Lite Machines' Small Business Innovation Research programs with the Navy, Air Force, Army and Special Operations Command.

In addition, Plaintiff and his brother, David Arlton have asserted patent infringement claims against AeroVironment, Inc., in *Paul E. Arlton and David J. Arlton v. AeroVironment, Inc.*, 687 F. Supp. 3d 899 (C.D. Cal. 2023) for the Mars Helicopter's infringement of the '763 patent, which is pending in the United States District Court for the Central District of California.

All of the aforementioned cases involve patented technology owned by Paul Arlton and David Arlton which has been taken for use by the Government under the same or similar circumstances. As such, the cases described above may be considered related to the instant case.[1]

---

[1] Note that while Plaintiff has included this Statement of Related Cases for reference, he does not officially designate the discussed cases as "related" to this complaint under LCvR 40.5 pursuant to the court's decision in *America First Legal Foundation v. U.S. Dep't of Veterans Affairs*, 2022 cv 01900 (D.D.C. 2024) (holding that cases were not "related" under LCvR 40.5 when Plaintiff submitted the same FOIA request

## COMPLAINT

Plaintiff, Paul Arlton, by and through counsel, initiates this action against Defendant, the United States Department of the Navy, acting through its offices the Naval Research Lab ("NRL") and Office of Naval Research ("ONR") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and alleges as follows:

## INTRODUCTION

1. This Complaint, brought pursuant to the FOIA, concerns the clear failure of Defendant to comply with the FOIA in response to record requests submitted by Plaintiff on January 8, 2021, related to the NOMAD drone. The NOMAD done is a small electric powered coaxial-rotor helicopter drone developed by Defendant. The NOMAD drone can be launched from a tube and act as a radio jammer or a radar decoy or be used for tagging and tracking moving targets.

2. Due to understaffing at NRL during the COVID-19 pandemic, and lack of coordination between Defendant's FOIA offices, Plaintiff's initial request was processed under multiple FOIA numbers (DON-NAVY-2021-002595, DON-NAVY-2021-011112 and DON-NAVY-2023-005303). Defendant, however, has failed to complete their review of over 5000 pages of records stored at NRL, leading Plaintiff to file multiple detailed appeals.

3. On October 30, 2023, Defendant's Office of General Counsel consolidated Plaintiff's appeals and remanded the single consolidated appeal (DON-NAVY-2023-014792) to ONR to complete a new single, final agency action on the consolidated request. Since that time, ONR has failed to complete its search, release any additional records or issue a final agency action.

4. Defendant has thus failed to respond to Plaintiff's requests within the statutory time period required by 5 U.S.C. § 552(a)(6)(A), withheld and improperly redacted records through the assertion of inapplicable exemptions in violation of 5 U.S.C. § 552(a)(3)(A), failed to conduct an

---

to 11 different agencies, as the litigation involving the agencies' responses would not necessarily present common issues to be resolved, despite the requests involving the same types of records.)

3

adequate search for the requested records in violation of 5 U.S.C. § 552(a)(3)(C), and failed to produce segregable information in violation of 5 U.S.C. § 552(b) and 5 U.S.C. § 552(a)(8)(A)(ii).

5.  Defendant's mishandling of Plaintiff's request contravenes many of the basic principles underpinning the FOIA, which is based on the belief that an informed citizenry is essential to the functioning of a democratic society. Moreover, the FOIA is designed to remove barriers to accessing government records and promote the presumption of openness in government operations.

6.  These directives, among others, were recently detailed in the United States Attorney General's memorandum of March 15, 2022, regarding Freedom of Information Act Guidelines. Exhibit 1.5 at 1-3. Defendant's delayed and improperly withheld and redacted responses directly contravene the stated goals of the FOIA and the Attorney General's explicit guidelines.

7.  Accordingly, Plaintiff requests that the Court review the Defendant's responses to Plaintiff's FOIA requests and order Defendant to produce the requested records, remove improper redactions, and reimburse Plaintiff for the reasonable costs and attorneys' fees of this suit.

## THE PARTIES

8.  Plaintiff Paul Arlton is an aerospace engineer with a master's degree in business administration from Stanford University and is a resident of the county of San Diego, State of California. His principal place of residence is in Carlsbad, California. He and his brother, David Arlton, are inventors and developers of technology related to rotary wing vehicles and, in particular, to small unmanned aerial vehicles ("UAVs") or drones.

9.  Defendant United States Department of the Navy is an agency of the United States Government responsible for the United States' operations at sea with a principal place of business at 720 Kennon St., SE, Building 36, Room 233, Washington Navy Yard, DC 20374-501.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)), 28 U.S.C. § 1331, and the equitable powers inherent in the courts of the United States.

11. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331, as Washington, DC is the principal place of business for Defendant. Defendant has full possession and control over all records requested herein through its offices at ONR and NRL.

## BACKGROUND OF COMPLAINT

12. The history of Plaintiff's FOIA request, including Defendant's strong motivation for withholding requested records and willfully violating the FOIA, is described in Plaintiff's FOIA appeal of Defendant's response to DON-NAVY-2021-002595 dated November 1, 2022, which is summarized below for the convenience of the Court. *See* Exhibit 1 at 1-5 (note that Exhibits 1 through 8 of Plaintiff's FOIA appeal in Exhibit 1 are provided as Exhibits 1.1 through 1.8 of this Complaint).

13. In the early 2000's, Plaintiff Paul Arlton and his brother David Arlton (the "Arltons") invented a tube-launched electric powered coaxial-rotor unmanned aerial vehicle ("UAV" or "drone") named Voyeur that solved the fundamental problems associated with stabilizing and controlling the flight of traditional coaxial rotor helicopters. The Arltons obtained over 60 patents in the United States and countries around the world for the Voyeur and its variants which they licensed to their company Lite Machines Corporation ("Lite"). *Id.* at 1.

14. Since 2005, Lite has been awarded over $30 million in Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") contracts under 15 U.S.C. § 638 (the "SBIR Statute") to develop and demonstrate the Arltons' unique drone technologies to the Navy, Air Force, Army and Special Operations Command. *Id.* at 1.

15. As shown in Figures 1 and 2 below, the Voyeur drone is unique among hovering aircraft in that it has multiple flight modes and may include a fixed-wing booster module for high-speed horizontal flight. In its first flight mode it flies like an airplane for high-speed delivery of a payload to a desired location. In a second flight mode it flies like a helicopter for precise terminal delivery of the payload to a point on the ground. Consequently, the Voyeur drone has significant utility in many government applications where speed and precision are required.



**Fig. 1**: Dual-mode Voyeur drone with booster module flying over ship at sea.



**Fig. 2:** Dual mode Voyeur drone with booster module (Fig. 2a), separating from booster module (Fig. 2b), and in a stable hover (Fig. 2c).

16. In 2008, Lite was awarded a $10.5 million sole-source SBIR Phase III IDIQ prime contract to develop the Voyeur UAV for Defendant. The Voyeur program was transferred to the Air Force in 2010. *Id.*

17. In 2013 and 2014, Lite Machines' SBIR program manager for Defendant contacted Lite with a request to develop a tube-launched coaxial helicopter drone weighing 15 to 20 pounds that could be launched from a ship and carry a radio jammer. At the time, Lite was under contract with the Air Force at Joint Base Anacostia–Bolling just minutes away from the offices of NRL, so NRL had easy access to Air Force personnel and Lite's SBIR data in the Air Force's files, but Plaintiff heard nothing further. *Id.* at 1-2.

18. Plaintiff learned through Defendant's press releases in 2019 that, without Plaintiff's knowledge or authorization, NRL's lead engineer, Steve Tayman, developed a tube-launched electric-powered coaxial rotor helicopter drone called "NOMAD" based on SBIR technologies that Lite had previously demonstrated to Defendant. The NOMAD drone also infringes U.S. Pat. No. 10,814,969 B2 ("the '969 patent") that the Arltons' have licensed to Lite for its SBIR programs. *Id.* at 2.

19. Plaintiff also learned from industry news articles that Defendant filed a patent application for the NOMAD drone in 2017, which was issued as U.S. Pat. No. 10,793,265 B2 ("the '265 patent") in 2020. The '265 patent lists Mr. Tayman as the inventor and cites four patents and patent applications owned by the Arltons as prior art. *Id.* at 2; Exhibit 2 at 1; Exhibit 3 at 52, 60; *See also* Fig. 3, below.



**Fig. 3:** Nomad drone as shown in U.S. Pat. No. 10,793,265 B2 to the Navy.

20.    Plaintiff subsequently obtained Defendant's patent application and office actions from the United States Patent and Trademark Office ("USPTO"). The '265 patent also contains proprietary and trade secret information related to upward folding rotor blades drawn from Lite's prior SBIR programs. *See* Exhibit 1 at 2; Exhibit 3 at 31-32, 38-46.

21.    Plaintiff filed FOIA request DON-NAVY-2021-002595 to ascertain how and when proprietary information pertaining to Lite's SBIR programs with Defendant found its way into the NOMAD drone development and the patents assigned to Defendant by NRL's lead engineer. Exhibit 1 at 2.

22.    In response to Plaintiff's request, ONR produced 210 pages of technical presentations describing the design and testing of the NOMAD drone by NRL but referred Plaintiff's request for contracts and statements of work directly to NRL. Exhibit 1.2 at 1. However, even after waiting more than a year for NRL's FOIA office to recover from COVID-19, and after focusing and clarifying the scope of Plaintiff's request on several occasions, NRL did not produce

the records Plaintiff requested. In addition, NRL failed to produce 105 pages of documents that ONR forwarded to NRL for review the previous year and issued an entirely new FOIA case number for these records. *Id.*

23. On August 5, 2022, NRL advised Plaintiff that it had identified over 5000 pages of records in Mr. Taymen's files regarding the development of the NOMAD drone but that it had "no records" of prime contracts, subcontracts, RFIs, solicitations, RFPs, and proposals for the NOMAD drone program. Exhibit 1.3 at 2-4. From Lite's long history developing similar drones for both Defendant and the Air Force, however, Plaintiff knew that military drone development programs must include contracts and a detailed Statement of Work ("SOW"). Exhibit 1 at 2.

24. Based on his own experience, Plaintiff believed that the SOWs for the NOMAD drone would be around 10 pages in length and thus would not be difficult or costly to produce. *Id.* at 3. However, to date none of these records have been produced by Defendant.

25. NRL requested that Plaintiff reformulate his request in order to lessen review time and lower processing costs. *Id.* Accordingly, Plaintiff greatly narrowed the scope of his request to fewer than 10 pages. Exhibit 1 at 2, 4; Exhibit 1.3 at 3; Exhibit 1.6 at 1-2.

26. On September 27, 2022, however, NRL issued a final response demanding Plaintiff pre-pay a processing fee of $140,000 before NRL would continue its search. Exhibit 1 at 3-4, Exhibit 1.7 at 3, ¶6. Plaintiff responded that NRL's demand of $140,000 was "wildly out of bounds" for 10 pages of records. Exhibit 1.7 at 1.

27. On November 1, 2022, Plaintiff appealed NRL's response to DON-NAVY-2021-002595 arguing that NRL's response was incomplete and improper and that NRLs' failure to produce a timely and complete response to his request was due to Defendant's general reluctance to publicly disclose the origins of the NOMAD drone and the '265 patent because the NOMAD drone was improperly based on Lite's prior SBIR work. Plaintiff further asserted that hiding administrative error and/or malfeasance is not a proper basis for withholding information under any FOIA exemption. Exhibit 1 at 4.

28. On November 30, 2022, NRL issued an initial agency response to the 105 pages of documents that ONR forward to NRL for review in 2021 withholding all records in full and claiming them to be "Department of Defense critical infrastructure security information" under FOIA exemption b(3). Exhibit 4 at 1-2.

29. On December 16, 2022, Defendant's Deputy General Counsel granted Plaintiff's appeal in part and remanded Plaintiff's request to ONR and NRL for further processing. The Deputy General Counsel, however, advised Plaintiff that his appeal was not "ripe for review" for errors and to wait for ONR and NRL to complete their search and issue a final action. Exhibit 8.A at 2.

30. On March 2, 2023, Plaintiff filed a second FOIA request with Defendant (DON-NAVY-2023-005303) extending the search period of the original search back four years from 2016 to 2012 to ensure a thorough search of all NOMAD program years (2012-2019). Exhibit 5 (note that the enclosures for Plaintiff's second FOIA appeal in Exhibit 5 are provided as Exhibits 5.1 through 5.5 of this Complaint);

31. On May 18, 2023, ONR issued a final release letter for DON-NAVY-2023-005303 after again finding no contracts or statements of work related to the NOMAD drone. The letter further advised that Plaintiff had a right to file an appeal within 90 days. Exhibit 6.

32. On August 13, 2023, Plaintiff appealed ONR's final release for DON-NAVY-2023-005303 reiterating that NRL still had not searched 5000 pages of records in Mr. Taman's files and arguing, "[i]t is simply not plausible that a team of government scientists, engineers and technicians could work for years on a military program without the requisite administrative paperwork." Exhibit 7 at 2.

33. On September 2, 2023, Plaintiff advised Defendant's Deputy General Counsel that NRL had failed to search the 5000 pages of record in its possession for the 10 pages of records requested by Plaintiff, that NRL was hiding multiple instances of error and that Plaintiff's appeal was ripe for review. Exhibit 8 (note that Exhibits A through D of Plaintiff's FOIA appeal in Exhibit 8 are provided as Exhibits 8.A through 8.D of this Complaint).

34. On October 30, 2023, Defendant's Deputy General Counsel combined Plaintiff's requests and appeals into a single consolidated request and remanded the consolidated request to ONR. Exhibit 9. The search period of the single consolidated request covers 2012 to 2019. The Deputy General Counsel further directed ONR to act as the single Initial Denial Authority (IDA), consult with NRL and Plaintiff as necessary, and complete a new single, final agency action within 30 days. *Id.* Thus, Plaintiff has exhausted all administrative remedies against NRL and was, prior to the filing of this Complaint, awaiting final action by ONR on the single consolidated request.

35. After waiting more than 10 months for ONR's final action, on September 23, 2024, Plaintiff requested a status report from ONR and NRL. ONR and NRL advised Plaintiff that ONR was still waiting for NRL to transfer the 5000 pages of records in its files to ONR and that no search had been performed. Exhibit 10 at 4.

36. In October and November 2024, Plaintiff again contacted ONR and NRL regarding the status of their search, but ONR still had not received any of the 5000 pages of records at issue from NRL. Exhibit 10 at 3-4.

37. On November 4 and November 17, 2024, Plaintiff contacted ONR and NRL yet again regarding the status of their search and was advised that NRL's Counsel was "actively engaged with NRL's leadership on the production process." But to date, no further records have been released and ONR has not issued a final agency action. Exhibit 10 at 2.

**Widespread and Exceptional Public Interest**

38. The NOMAD drone is related to NASA's Mars Helicopter Ingenuity in that both the NOMAD drone and Mars Helicopter Ingenuity derive from Lite's prior SBIR work with the Navy, Air Force, Army and Special Operations Command, and both incorporate patented technology owned by the Arltons.

39. The Arltons allege in *Lite Machines Corporation, et al. v. The United States*, 143 Fed. Cl. 267 (2019), that the Nomad Drone and Mars Helicopter Ingenuity were both developed by Government personnel in an attempt to circumvent a six-year sole-source SBIR Phase III

11

contract awarded to Lite by the Air Force in 2013, which was based on the Arltons' patented technology. Instead of developing their own designs, JPL and NRL copied Lite's patented SBIR technology leading to multiple lawsuits by the Arltons and Lite against the Government as described in the Statement of Related Cases in this Complaint.

40.  There is widespread and exceptional media interest in the above-described events because the Mars Helicopter Ingenuity made the historic first flight on the planet Mars in 2021. This was the first powered, controlled flight on another planet and NASA's Jet Propulsion Laboratory ("JPL"), which built the Ingenuity helicopter, ultimately won the 2021 Collier Trophy for the greatest achievement in aeronautics or astronautics in America.

41.  NASA officially credits JPL's chief engineer as the inventor of the Mars Helicopter Ingenuity. Dozens of news and public interest articles by national news outlets detailed JPL's development efforts. Given the historic nature of the program, the popular press dubbed the first flight on Mars in 2021 the "Wright Brother's Moment for Mars." The White House held a special press event as President Biden personally congratulated the Mars Helicopter team for its historic flight. Following a surge of public interest and intense media coverage, the aviation industry awarded JPL's team the Collier Trophy in 2022 "for the greatest achievement in aeronautics or astronautics in America."

42.  NRL developed the NOMAD drone to meet the same underlying Government specifications as the Mars Helicopter. Like NASA, the Navy officially credits NRL's lead engineer as the inventor of the NOMAD Drone. The requested records in the instant case, however, demonstrate that the NOMAD drone was based on technology invented and patented by the Arltons, not NRL. Lite subsequently developed the Arltons' technology in numerous SBIR programs for the Air Force, Navy, Army and Special Operations Command over a period of 10 years. The public would be keenly interested to know that the Navy's and NASA's claims of innovation and inventorship are both predicated on falsehoods.

43.  The subject matter at issue in Plaintiff's FOIA request also raises possible questions about the Government's integrity that would affect public confidence. Notably, the requested

records detail and support allegations that the Government misappropriated patented technology belonging to the Arltons and utilized that technology in both the NOMAD drone and the Ingenuity helicopter. Publication of the requested records would cause the public to question the Government's integrity as the records establish that the Government retroactively authorized public use of the Arltons' patented technology (essentially misappropriating private technology it claimed to have invented) and refused to honor the Government's statutory obligations to Lite under the SBIR program.

44. In sum, the requested records demonstrate that Defendants in the instant case were unable to independently develop the technology required for the NOMAD drone, calling into question the soundness and integrity of Government's expensive development programs. Public confidence would be eroded if the Government revealed that it mismanaged both the NOMAD drone and Mars Helicopter programs, wasted public funds on fruitless ventures, and relied on the misappropriation of private, patented technology to achieve its goals.

45. The Government has prevented the release of many records in the present case citing exemption b(3) for "Department of Defense critical infrastructure security information." However, the requested records do not require protection in the interest of national security. Plaintiff's request for records was prompted by Defendants' voluntary disclosure of the NOMAD drone on public websites and in detailed patent filings in the USPTO. Disclosure of the requested records, and the close relationship of the NOMAD drone to the Mars Helicopter Ingenuity, would cause the public to question the Government's integrity and erode public confidence in the Government's stewardship of public funds and its ability to manage important public programs.

**Exhaustion of Remedies**

46. It has now been over four years since Plaintiff filed his original FOIA request to Defendant. Plaintiff still has not received substantive records relating to the core of his request despite narrowing his request to about 10 pages. Many responsive records have been improperly withheld in full while much of what Plaintiff has received contains redactions supported by

improperly claimed exemptions. Moreover, ignoring explicit direction from Defendant's Deputy General Counsel on multiple occasions, ONR and NRL have failed to search 5000 pages of documents in their possession for the 10 pages of records that Plaintiff has requested and issue a final agency action.

47. In filing his FOIA request, Plaintiff followed proper procedures and relevant agency regulations. Plaintiff also properly filed a first administrative appeal on November 1, 2022, and a second appeal on August 13, 2023, prior to seeking judicial relief to compel immediate release of all improperly withheld records. Plaintiff has now done "all that he could do to obtain a final administrative decision on his request." *Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 328 (D.D.C. 2002). Plaintiff has thus exhausted his administrative remedies under the FOIA.

48. Further, after multiple rounds of appeals, on October 30, 2023, Defendant's Deputy General Counsel directed ONR to issue a final agency action within 30 days. As of the date of this complaint, no such action or determination has been issued. According to 5 U.S.C. § 552(a)(6)(A)(ii), Defendant must "make a determination" on an appeal within 20 days, otherwise administrative remedies are considered constructively exhausted. *See Spannaus v. U.S. Department of Justice*, 262 U.S. App. D.C. 325, 824 F.2d 52, 58 (D.C. Cir. 1987). Defendant has not gathered and reviewed the necessary documents, has not determined and communicated the scope of documents it intends to produce, and has not provided the reasoning for withholding any documents. *See Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC,* 711 F.3d 180, 189 (D.C. Cir. 2013). Defendant has thus failed to "made a determination" within the relevant time as required by statute, and, as such, Plaintiff's administrative remedies have been constructively exhausted.

## CLAIMS FOR RELIEF

49. Plaintiff has properly requested records within the possession, custody, and control of Defendant through FOIA requests DON-NAVY-2021-002595 and DON-NAVY-2023-005303 and associated amendments and clarifications requested by Defendant. Plaintiff's requests and

appeals to Defendant have been consolidated into a single action by the Defendant's Deputy General Counsel and remanded to ONR for a final agency action.

### Count I: Failure to Timely Respond to FOIA Request

50. Plaintiff submitted his original FOIA request more than four years ago, and Defendant still has not meaningfully responded to Plaintiff's request.

51. ONR has failed to search 5000 pages of records located in NRL's files in 2023 and issue a final agency action despite explicit direction from Defendant's Deputy General Counsel to do so within 30 days.

52. In November 2024, NRL advised Plaintiff that "NRL's Counsel is involved and actively engaged with NRL leadership on the production process." Thus, Defendant concedes that it has not completed their production of records to Plaintiff.

53. Defendant's failure to respond to Plaintiff's requests within the statutory time period violates the FOIA, 5 U.S.C. § 552(a)(6)(A). Defendant's failure to make records promptly available in response to Plaintiff's requests further violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

### Count II: Improper Withholding of Records

54. Defendant has tried to dissuade Plaintiff from pursuing his request by charging search and review fees that are "widely out of bounds" and disproportionate to the records sought (i.e. NRL demanded Plaintiff pre-pay $140,000 in fees before searching for 10 pages of requested records). Such fees are "excessive" under USC 552(a)(4)(A). Fees are considered excessive when they exceed costs, or when the cost is clearly so large as to discourage requestors from seeking records. *See National Treasury Employees Union v. Griffin*, 811 F.2d 644 (D.C. Cir. 1987).

55. Defendant has also withheld many records by improperly claiming exemptions. For example, Defendant improperly asserted exemption b(3) to justify withholding 105 pages of records as "Department of Defense critical infrastructure security information" when the records sought relate to a drone that is widely known through the Defendant's own publications in industry journals and patent disclosures in the USPTO.

56. As of the date of this Complaint, Defendant has failed to issue a final agency action.

57. As a matter of law, no exemption protects the records sought by the Plaintiff from disclosure and the Defendant has improperly claimed the exemptions to prevent disclosure that is mandatory under the FOIA.

58. Through continued delay and outright failure to properly respond to Plaintiff's lawful requests for records, and their improper withholding of such requested records, Defendant has failed to comply with the FOIA's prescribed requirements for public availability of records in violation of 5 U.S.C. § 552(a)(3)(A).

### Count III: Inadequate Record Search

59. Plaintiff has demonstrated that the requested records exist and are in the possession, custody and control of Defendant. In addition, the Deputy Attorney General for the Navy directed ONR to search 5000 pages of records from NRL and issue a final agency action in 30 days. That was 497 days ago.

60. Under the FOIA, Defendant is required to respond to Plaintiff's records request by making reasonable efforts to search for the records requested. 5 U.S.C. § 552(a)(3)(C). Defendant has violated its obligations under the FOIA by failing to conduct an adequate search for records responsive to Plaintiff's FOIA request.

### Count IV: Failure to Produce Segregable Information

61. Defendant has improperly withheld records in full. Defendant's failure to disclose any servable, non-exempt portions of responsive records in response to Plaintiff's requests violates the FOIA, 5 U.S.C. § 552(b) and 5 U.S.C. § 552(a)(8)(A)(ii).

### CONCLUSION

62. As a result of the denial of access to the requested records, Defendant continues to violate the FOIA and Plaintiff has a right to judicial relief in this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Expedite its review due to the significant time that has already elapsed since the original request, the historical significance of the subject matter, and the immediate public interest in and benefit of the records requested;

2. Issue an injunction requiring Defendant to:

    a. Conduct a thorough search for records responsive to Plaintiff's FOIA requests;

    b. Immediately process all responsive records for release;

    c. Produce a Vaughn index of any responsive records or portions of responsive records being withheld under a claim of exemption; and

    d. Produce by a date certain all non-exempt records responsive to Plaintiff's FOIA requests.

3. Award Plaintiff's reasonable costs and attorney's fees incurred in this action; and grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Michelle N. Bradford*
DC BAR #491910
BARNES & THORNBURG LLP
555 12th Street N.W., STE 1200
Washington, DC, 20004
Phone: (202)-408-6922
Facsimile: (202)-289-1330
MBradford@btlaw.com